# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK WALSH, | ) 1:10-cv-01060 LJO GSA |
| | ) |
| | ) |
| Plaintiff, | ) **FINDINGS AND RECOMMENDATIONS** |
| | ) **REGARDING PLAINTIFF'S** |
| v. | ) **SOCIAL SECURITY COMPLAINT** |
| | ) |
| MICHAEL J. ASTRUE, Commissioner | ) |
| of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>BACKGROUND</u>

Plaintiff Patrick Walsh ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Magistrate Judge Gary S. Austin, for findings and recommendations to the District Court.

//

//

//

//

# FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed an application for disability insurance benefits in December 2006, alleging disability beginning July 29, 2006.  AR 88-90.  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 53-66.  ALJ Sandra K. Rogers held a hearing on April 22, 2008, and issued an order denying benefits on September 4, 2008, finding Plaintiff was not disabled.  AR 13-19.  On April 6, 2010, the Appeals Council denied review.  AR 1-3.

## Hearing Testimony

ALJ Rogers held a hearing on April 22, 2008, in Stockton, California.  Plaintiff appeared and testified; he was assisted by attorney Sengthiene Bosavanh.  Vocational Expert ("VE") Stephen B. Schmidt also testified.  AR 20-40.

Plaintiff was fifty-three years old at the time of the hearing.  AR 22.  He is married and lives with his wife.  AR 23.  Plaintiff is six feet, one inch tall, and weighs about 195 pounds.  AR 23.  When asked whether he drives, Plaintiff indicated that he seldom does so.  On the occasion when he does drive, Plaintiff travels about five to ten miles to the grocery store.  AR 23. Additionally, Plaintiff indicated he can only drive when he does not take his medication because its side effects cause him to become lightheaded and dizzy.  AR 25-26.

Following graduation from high school, Plaintiff received additional training for positions as an emergency medical technician and a cable television lineman.  He does not have a college degree.  AR 24.  Plaintiff last worked as a copier and printer repair person, but he can no longer do that work because it involves "too much lifting . . . and fine finger work."  AR 24.  More specifically, he has a tendency to drop things and he fears dropping something inside a printer he is called upon to repair.  AR 25.

When he was asked whether he could return to work on a full time basis, Plaintiff indicated he could not because "[i]t's just hard."  AR 25.  He can no longer lift or use a

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1 | computer; he cannot sit or walk for "for any period of time," and he is "in pain all the time."  AR
2 | 25.

3 |     Plaintiff suffers from severe pain in his right knee and left ankle, pain in his left knee, and
4 | numbness in both arms and hands.  Additionally, there is "some ringing" in his ears and he finds
5 | it hard to concentrate.  AR 26.  He also has pain in his lower spine and neck.  AR 26.  With
6 | regard to the pain in his neck, it is always present and restricts his mobility - he cannot turn his
7 | head left and right quickly without spasms.  AR 26-27.  His shoulders "just hurt."  AR 27.
8 | Further, his feet swell and become numb if he sits for fifteen to twenty minutes, and when he
9 | walks his left ankle pain increases.  AR 27.

10 |     With specific regard to his knees, Plaintiff has been told by his doctors that a knee
11 | replacement surgery was an option, however, he has spoken with others about the procedure and
12 | believes he is too young.  AR 27.  He has had "ACL reconstruction," but the doctors are now
13 | recommending a complete knee replacement involving removal of bone.  AR 28.  Another reason
14 | he has not agreed to the replacement surgery involves his understanding that "it doesn't last
15 | longer than more than 10 to 15 years."  AR 28.

16 |     Plaintiff can sit for a maximum of fifteen minutes before he suffers "total numbness" in
17 | his feet and feels "contractions" in his right leg.  AR 28.  He lies down and elevates his legs
18 | throughout the day.  Plaintiff will do chores around the house for ten to twenty minutes at a time,
19 | but then he must take a break.  AR 31.

20 |     When he feels pain in his back, after about half an hour or forty-five minutes of sitting,
21 | Plaintiff has to get up and exercise.  AR 28.  His back condition is the result of a spinal birth
22 | defect.  He receives complete adjustments from a chiropractor; there are no recent x-rays or
23 | MRIs of his back.  He has not been given a back brace or a referral to physical therapy.  AR 34.
24 | Plaintiff can stand or walk for fifteen to twenty minutes, but not without pain.  He cannot walk or
25 | stand for any period of time without pain.  AR 29.  Plaintiff estimated he could walk about one-
26 | eighth of a mile before needing to stop; he does walk that distance every two to three days
27 | because he fears gaining weight.  AR 29.  It takes him about thirty to forty minutes to walk one-
28 | eighth of a mile.  AR 29.

3

1    The heaviest weight Plaintiff can lift and carry is "[p]robably five pounds." AR 29.  He

2    can no longer use his hands to grab or manipulate items due to the numbness in his hands and a

3    tendency to drop things.  AR 30.  When he was asked whether it became harder to use his hands

4    as the day progressed, Plaintiff indicated that it would.  He also indicated that if he took a half-

5    hour or forty-five minute break, he could probably continue using his hands for another five to

6    ten minutes before the numbness returned.  AR 30.  He has difficulty pouring from a gallon jug.

7    AR 30.  Plaintiff understands the diagnosis regarding his hands is "stenosis" and he believes it is

8    the result of a car accident in the 1980s.  He has not undergone surgery for this condition in his

9    hands, nor has he been referred for physical therapy or been given hand splints.  AR 33-34.

10    The medications he has been prescribed cause Plaintiff to suffer from side effects.

11    Plaintiff feels "fuzzy" and his ears ring for about fifteen minutes at a time, six or seven times a

12    day.  AR 31.  He has difficulty sleeping because his arms and shoulders become numb, then he

13    gets "pins and needles," and as a result he wakes about six times a night.  While Plaintiff is in

14    bed for nine hours, he only gets about six and a half hours of sleep.  He does not feel rested in the

15    morning.  AR 32.

16    Plaintiff can no longer enjoy skiing, biking, hiking, and walking like he used to.  He also

17    used to enjoy his work.  AR 32.

18    VE Steve Schmidt characterized Plaintiff past work as an office machine servicer, DOT[2]

19    633.281-018, light and medium as performed, with an SVP[3] of 7.  Plaintiff also has past work as

20    a sign erector, DOT 869.381-026, medium and heavy as performed, with an SVP of 7.  AR 33.

21    Next, the VE was asked to consider a hypothetical worker of Plaintiff's age, education

22    and work history, who could lift twenty pounds occasionally and ten pounds frequently, could

23    stand or sit for six hours in an eight-hour work day, but whom could only occasionally perform

24    bilateral lower extremity pushing or pulling, and crouching or crawling.  AR 34.  The VE

25    indicated such an individual could not perform Plaintiff's past relevant work.  AR 34.  Some

26

27    [2]"DOT" refers to the Dictionary of Occupational Titles.

28    [3]"SVP" refers to specific vocational preparation.

light assembly work from his past relevant work may be transferable.  AR 35.  For instance, the electronics associated with office machine repair may transfer to a position such as: electrical equipment tester, DOT 729.381-010, light and SVP of 6; and assembler, DOT 729.384-010, light and SVP of 3, semi-skilled.  AR 35-36.

Plaintiff's counsel asked the VE whether such a hypothetical worker could perform the work identified above were he able to "do less than occasional fine finger manipulation," or required an at will sit/stand option, or the ability to elevate one leg at least two hours a day.  The VE indicated such a worker would be precluded from those jobs.  AR 36.  The VE was also asked to consider a hypothetical worker with the following limitations: ability to handle for four hours in an eight-hour day, feel and/or grasp for two hours in an eight-hour day, and whom could push or pull less than twenty-five pounds for four hours in an eight-hour day.  AR 36-37.  VE Schmidt indicated that such limitations would preclude the jobs previously identified.  AR 37. Finally, Plaintiff's counsel also asked the VE to consider a worker who could handle, feel and/or grasp for one hour at a time, and push or pull less than twenty-five pounds for no more than two hours.  The VE indicated such an individual would be precluded from all work.  AR 37-39.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 175-244.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 13-19.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 29, 2006.  AR 15.  Further, the ALJ identified bilateral osteoarthritis in the knees with a history of ACL repair in the right knee as a severe impairment.  AR 15. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments.  AR 15-16.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift twenty pounds occasionally and ten pounds

frequently, can sit, stand and walk for six hours in an eight-hour day, and can occasionally push

or pull with the bilateral lower extremity, and occasionally crouch or crawl.  AR 16-17.

Next, the ALJ determined that Plaintiff could not perform his past relevant work.  AR 17-

18.  Nevertheless, based upon Plaintiff's age, education, work experience and RFC, the ALJ

determined there were jobs that existed in significant numbers in the national economy that

Plaintiff could perform.  Specifically, the ALJ found Plaintiff could perform the work of a

electronics servicer and an assembler.  AR 18-19.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision

to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

this Court must determine whether the decision of the Commissioner is supported by substantial

evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

401.  The record as a whole must be considered, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

This Court must uphold the Commissioner's determination that the claimant is not disabled if the

Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th

Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in

substantial gainful activity due to a medically determinable physical or mental impairment which

has lasted or can be expected to last for a continuous period of not less than twelve months.  42

U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of

such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ failed to properly evaluate the medical evidence, failed to properly evaluate the testimony of both Plaintiff and his wife, and failed to meet her burden at step five. Lastly, Plaintiff argues the evidence provided to the Appeals Council supports his claims.

## DISCUSSION

### *The ALJ's Consideration of the Medical Opinion Evidence*

Plaintiff argues that the ALJ failed to properly evaluate the opinions of Drs. Ramos, Harris and Martinez, as well as that of chiropractor Paiso. (Doc. 16 at 7-15.) Defendant asserts no error occurred and the medical evidence was properly evaluated. (Doc. 21 at 9-12.)

### 1.   Applicable Legal Standards

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

1   *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  As is the case with the opinion of a treating

2   physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

3   uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506.  And like the opinion

4   of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor,

5   can only be rejected for specific and legitimate reasons that are supported by substantial evidence

6   in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

7          The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence

8   that justifies the rejection of the opinion of either an examining physician or a treating physician.

9   *Pitzer v. Sullivan*, 908 F.2d at 506 n.4; *Gallant v. Sullivan*, 753 F.2d at 1456.  In some cases,

10  however, the ALJ can reject the opinion of a treating or examining physician, based in part on the

11  testimony of a nonexamining medical advisor.  *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55

12  (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.

13  1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a

14  treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to

15  reject the opinions of Magallanes's treating physicians . . .."  *Magallanes*, 881 F.2d at 752.

16  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also

17  relied on laboratory test results, on contrary reports from examining physicians, and on testimony

18  from the claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.

19                  **2.      ALJ's Findings**

20         Here, ALJ Rogers found as follows:

21

22         As for the opinion evidence, the undersigned rejects the opinion of Dr.
       Adam C. Paiso regarding the claimant's inability to engage in any level of
       exertional work on a full time basis.  Dr. Paiso is a chiropractor with no
23     documentary treating relationship with the claimant.  Generally, chiropractors are
       not considered an "acceptable medical source" in the Regulations.
24         The undersigned has also accorded little weight towards Dr. Mattice
       Harris' opinion that the claimant is restricted to only sedentary work and Dr. Eric
25     Ramos' opinion that he cannot sustain any level of full time work activities.  Dr.
       Harris noted that the claimant needs to elevate his legs for 1-2 hours a day and
26     avoid prolonged use of his hands and fingers.  Dr. Ramos similarly found the
       claimant would need to lie down or elevate his legs for 3 hours a day.  The
27     undersigned finds little in the objective evidence to support these restrictions.
       Regarding the claimant's knees, it appears he has only minimal degenerative
28     concerns in the left knee.  While his right knee is more problematic, the record

                                        8

1  does not suggest an inability to sustain full time work as a result of past ACL
   repair and current arthritic changes.  Restrictions upon the claimant's upper
2  extremities are also not justified by the clinical findings of very strong Jamar
   Dynometer measurements (up to 85 pounds in both the right and left hand).
3         After considering all the medical evidence, the undersigned finds that
   substantial weight can be accorded to the State Agency examiner's opinion
4  regarding the claimant's residual functional capacity.  Such opinion was derived
   following a review of all the available medical records.  It is consistent with the
5  objective clinical findings and is well reasoned.

6  AR 17, internal citations omitted.

7               **3.    Analysis**

8         Dr. Harris' opinion, while stating that Plaintiff must elevate his right leg for one to two

9  hours per day, also provides that Plaintiff is *not* precluded from performing full time work "at

10 any exertional level."  AR 211.  Dr. Harris found Plaintiff capable of sitting for four to six hours

11 in an eight-hour day, and capable of standing or walking for four to six hours in an eight-hour

12 day.  AR 211.  Moreover, the objective findings that Dr. Harris points to in support of the

13 restriction to elevating Plaintiff's leg is "tenderness to the knee and pain more so on the [right]."

14        Dr. Ramos' opinion provides that Plaintiff must lie down or elevate his leg for "about

15 three hours" and relies upon the "note from Dr. Martinez" as the "objective findings" upon which

16 he based his opinion.  AR 231.  Yet Dr. Martinez made no finding that required elevation of

17 Plaintiff's leg.  *See* AR 228-230.  The Court notes also that Dr. Ramos opined that Plaintiff was

18 not capable of sitting for more than thirty minutes in an eight-hour day or walking or standing for

19 more than twenty minutes in an eight-hour day.  AR 231.  A review of Dr. Ramos' records fails

20 to establish or provide evidence in support of such a restriction.  The opinions contradict one

21 another insofar as Plaintiff's purported abilities regarding sitting, standing and walking within an

22 eight-hour work day.  *Cf.* AR 211 to 231.

23        The ALJ provided clear and convincing reasons for rejecting the opinions of both Dr.

24 Ramos and Dr. Harris.  She set out a detailed and thorough summary of the facts and conflicting

25 clinical evidence, stating her interpretation thereof, and making findings.  *Magallanes  v. Bowen*,

26 881 F.2d at 751.  A review of the records from both physicians reveals that neither's opinion is

27 well-supported and is inconsistent with the other substantial evidence in the record.  *Lingenfelter*

28 *v. Astrue*, 504 F.3d 1028 (9th Cir. 2007).   The consistency of a medical opinion with the record

as a whole is a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d at 1042; *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).   The ALJ did not substitute her own opinion for those of the treating physicians as Plaintiff contends.

Dr. Adam C. Paiso completed a similar questionnaire, finding that Plaintiff was precluded from work due to "acute knee pain, low back pain, neck and shoulder pain resulting in numbness in arms and hands." Dr. Paiso concluded that Plaintiff could sit for two to three hours in an eight-hour day and could stand or walk for one to two hours in an eight-hour day.  He too opined that Plaintiff would need to elevate his legs, but failed to identify any particular length of time. Asked to identify the objective findings he relied upon for that opinion, Dr. Paiso wrote "pain when passively and actively flexing knee or weight bearing."  AR 209.  As noted by the ALJ, Dr. Paiso is a chiropractor.

Chiropractors fall under the heading of "other sources" for purposes of the Social Security Regulations: "Medical sources who are not 'acceptable medical sources,' such as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists . . . ."  Social Security Regulation ("SSR") 06-03p.  Yet that was not the only reason offered by the ALJ for rejecting Dr. Paiso's opinion.  She also indicated she rejected his findings because there was "no documentary treating relationship with the claimant." AR 17.  The record bears this assertion out.  Further, it is Plaintiff's burden to produce full and complete medical records, not the Commissioner's.  *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999).

Plaintiff's assertion that the ALJ failed "to acknowledge the expertise of neurosurgeon, Dr. Martinez, who diagnosed Plaintiff with cervical degenerative disc disease based on objective test results," is not well taken.  The ALJ specifically referenced Dr. Martinez's findings as noted by her reference to Exhibit 12F.  Notably too, Dr. Martinez's report references a "working diagnosis."  *See* AR 230.  Moreover, the mere diagnosis of an impairment is not sufficient to sustain a finding of disability.  *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

1    ***Step Two Findings***

2        Plaintiff contends the ALJ erred by failing to find that cervical degenerative disc disease

3    was not a severe impairment.

4        At step two of the sequential evaluation process, the ALJ must conclude whether Plaintiff

5    suffers from a "severe" impairment.  The regulations define a non-severe impairment as one that

6    does not significantly limit [the claimant's] physical and mental ability to do basic work

7    activities.  An impairment is not severe "if the evidence establishes a slight abnormality that has

8    'no more than a minimal effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d

9    1273, 1290 (9th Cir. 1996).  To satisfy step two's requirement of a severe impairment, the

10   claimant must prove the existence of a physical or mental impairment by providing medical

11   evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of

12   symptoms alone will not suffice.  20 C.F.R. §§ 404.1508; 416.908.  The effects of all symptoms

13   must be evaluated on the basis of a medically determinable impairment which can be shown to

14   be the cause of the symptoms.  20 C.F.R. §§ 404.1529, 416.929.  An overly stringent application

15   of the severity requirement violates the statute by denying benefits to claimants who do meet the

16   statutory definition of disabled.  *Corrao v. Shalala,* 20 F.3d 943, 949 (9th Cir. 1994).

17       The step two inquiry is a *de minimis* screening device to dispose of groundless or

18   frivolous claims.  *Bowen v. Yuckert,* 482 U.S. 137, 153-154 (1987).  Further, the ALJ must

19   consider the combined effect of all of the claimant's impairments on his ability to function,

20   without regard to whether each alone was sufficiently severe.  42 U.S.C. § 423(d)(2)(B).  The

21   combined effect "shall be considered throughout the disability determination process.  *Id*.  The

22   adjudicator's role at step two is further explained by SSR 85-28:

23           A determination that an impairment(s) is not severe requires a careful
         evaluation of the medical findings which describe the impairment(s) and an
24       informed judgment about its (their) limiting effects on the individual's physical
         and mental ability(ies) to perform basic work activities; thus, an assessment of
25       function is inherent in the medical evaluation process itself. At the second step of
         sequential evaluation, then, medical evidence alone is evaluated in order to assess
26       the effects of the impairment(s) on ability to do basic work activities.

27

28

SSR 85-28.  ALJ Rogers considered as follows:

> Neurological examination of the claimant's cervical spine in March 2008 further demonstrated full range of motion with no tenderness or spasm.  Although a cervical MRI has been referenced regarding multi-level degenerative disc disease, the actual MRI report is not present in the record.  Moreover, even assuming that the claimant has medical determinable cervical degenerative disc disease, it does not appear that it is severe in nature.  For instance, the claimant was found to have only "possible" peripheral neuropathy, a diagnosis that is further weakened by negative EMG findings.  No surgery has ever been recommended for the claimant's cervical spine . . ..

AR 15-16.  The ALJ cited the lack of objective medical evidence in making her finding, and such a consideration is proper.  As previously noted, it is Plaintiff's burden to ensure the medical record was complete.  To the degree Plaintiff argues the MRI should have been reviewed and considered, Plaintiff is incorrect.  The MRI was apparently conducted on February 18, 2008 (*see* AR 230 [referenced therein]) and yet the hearing was held in this matter more than two months later on April 22, 2008.  Plaintiff's counsel stated no objections to the state of medical record on the date of the hearing.  AR 22.  The MRI was referenced in Dr. Martinez's report which was received by and or transmitted to Plaintiff's counsel's office prior to the hearing, on April 2, 2008.  Again, it is Plaintiff's burden to produce full and complete medical records.  *Meanel v. Apfel,* 172 F.3d at 1113.  The ALJ had no duty to further develop this record.  *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (holding that ALJs have a duty fully and fairly to develop the record only when the evidence is ambiguous or "the record is inadequate" to allow for proper evaluation of the evidence).

The ALJ's findings at step two are supported by substantial evidence and are free of legal error.

### *The Findings Regarding Plaintiff's Credibility*

Next, Plaintiff contends the ALJ improperly evaluated his testimony.  (Doc. 16 at 17-20.) The Commissioner asserts the ALJ's analysis is proper.  (Doc. 21 at 12-14.)

A two step analysis applies at the administrative level when considering a claimant's subjective symptom testimony.  *Smolen v. Chater*, 80 F.3d at 1281.  First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged.  *Id*. at 1281-1282.  If the claimant satisfies

1   the first step and there is no evidence of malingering, the ALJ may reject the claimant's

2   testimony regarding the severity of his symptoms only if he makes specific findings that include

3   clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which testimony is

4   not credible and what evidence suggests the complaints are not credible." *Mersman v. Halter*,

5   161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack of

6   specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it

7   impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial

8   evidence"); SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the

9   individual and to any subsequent reviewers the weight the adjudicator gave to the individual's

10   statements and reasons for that weight").

11       An ALJ may consider many factors when assessing the claimant's credibility. *See Light*

12   *v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's

13   reputation for truthfulness, prior inconsistent statements concerning his symptoms, other

14   testimony by the claimant that appears less than candid, unexplained or inadequately explained

15   failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily

16   activities, claimant's work record, or the observations of treating and examining physicians.

17   *Smolen v. Chater*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638. "An ALJ is not 'required to

18   believe every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*,

19   495 F.3d at 635.

20       The first step in assessing Plaintiff's subjective complaints is to determine whether

21   Plaintiff's condition could reasonably be expected to produce the pain or other symptoms

22   alleged. *Lingenfelter v. Astrue*, 504 F.3d at 1036. Here, the ALJ found that Plaintiff had the

23   severe impairment of bilateral osteoarthritis in the knees with a history of ACL repair in the right

24   knee. AR 15. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at

25   1281-1282.

26       "Despite the inability to measure and describe it, pain can have real and severe

27   debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from

28   working." *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). It is possible to suffer disabling

1  pain even where the degree of pain is unsupported by objective medical findings.  *Id.*  "In order

2  to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that

3  decision."  *Id.* (citing *Magallanes v. Bowen*, 881 F.2d at 755).  The findings must convincingly

4  justify the ALJ's rejection of the plaintiff's excess pain testimony.  *Id.* at 602.  However, an ALJ

5  cannot be required to believe every allegation of disabling pain.  "This holds true even where the

6  claimant introduces medical evidence showing that he has an ailment reasonably expected to

7  produce some pain."  *Id.* at 603.

8          Here, after acknowledging she had "considered all symptoms and the extent to which

9  these symptoms can reasonably be accepted as consistent with the objective medical evidence

10  and other evidence" (AR 16), ALJ Rogers made the following findings:

11              [T]he undersigned finds that the claimant's medically determinable
            impairments could reasonable be expected to produce the alleged symptoms;
12          however, the claimant's statements concerning the intensity, persistence and
            limiting effects of these symptoms are not credible to the extent they are
13          inconsistent with the residual capacity assessment for the reasons explained
            below.

14              Although the claimant and his wife have alleged extensive exertional and
            postural restrictions in their completed function reports, the objective medical
15          evidence does not fully support their claims.  The undersigned acknowledges that
            the claimant's bilateral knee problems can reasonably be expected to result in
16          some functional limitations.  However, the evidence fails to substantiate that the
            claimant is disabled from all exertional activities.

17              Records from Del Puerto Health Center indicate that the claimant reported
            being able to do "all" his activities of daily living.  Despite his alleged functional
18          restrictions, the claimant has noted that he can still handle the bulk of his personal
            care and is capable of doing some minor chores around the home as well as
19          washing dishes.  The claimant noted that he is not able to engage in physical
            activities such as hiking and skiing as he used to.  Nevertheless, he can still ski for
20          2 miles 1-2 times a season, go biking or hiding 1-3 times a year, and walk 1/4 to ½
            mile 1-2 times a week.  *The undersigned does not doubt that since his knee*
21          *problems, the claimant has become more physically restricted.  However, the*
            *claimant's continued ability to engage in the above-mentioned activities, albeit at*
22          *a decreased frequency and level of intensity, suggest a broader residual*
            *functional capacity than that alleged.*

23

24  AR 16-17, emphasis added & internal citations omitted.

25          ALJ Rogers provided specific, clear and convincing reasons for rejecting the extent of

26  Plaintiff's symptoms: the objective medical evidence does not support such extensive

27  restrictions, and Plaintiff's activities of daily living support an ability greater than that claimed by

28  Plaintiff.  Moreover, she cited to specific evidence in the record in support of her findings.  The

1    ALJ's reasons for rejecting Plaintiff's testimony as alleged are proper.  *See* SSR 96-7p (objective

2    medical evidence is a useful indicator to assist in making a reasonable conclusion about

3    credibility and the ability to function); *Orn v. Astrue*, 495 F.3d at 638 (the ALJ may discount

4    Plaintiff's credibility based on daily activities).  Lastly, Plaintiff's assertion that "the ALJ's

5    description of [his] activities is not an accurate reflection of his abilities" because those activities

6    are now more limited and infrequent is not well taken.  In fact, the ALJ plainly considered that

7    very fact as emphasized in the passage above.

8         In sum, the ALJ's findings are supported by substantial evidence and are free of legal

9    error.

10        ***Lay Witness Testimony***

11        Plaintiff contends the ALJ "failed to provide specific, germane reasons" for rejecting his

12   wife's testimony.  (Doc. 16 at 20-21.)  The Commissioner asserts no error occurred.  (Doc. 21 at

13   13-14.)

14        Lay witness testimony as to a claimant's symptoms is competent evidence which the

15   Commissioner must take into account.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).  The

16   ALJ may reject such testimony if he does so expressly, in which case "he must give reasons that

17   are germane to each witness."  *Id.*  The ALJ need not discuss lay witness testimony that pertains

18   to whether or not an impairment exists.  *Nguyen v. Chater,* 100 F.3d 1462, 1467 (9th Cir. 1996).

19   These medical diagnoses are beyond the competence of lay witnesses and therefore do not

20   constitute competent evidence.  20 C.F.R. § 404.1513(a).  However, once an impairment has

21   been established by medical evidence, the extent of the diagnosed impairment may be testified to

22   by the lay witnesses.  20 C.F.R. § 404.1513(e); *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.

23   1987).

24   //

25   //

26   //

27   //

28   //

1    Here, ALJ Rogers stated as follows:

2        Although the claimant and his wife have alleged extensive exertional and
     postural restrictions in their completed function reports (Exhibits 8E and 9E), the
3    objective medical evidence does not fully support their claims.  The undersigned
     acknowledges that the claimant's bilateral knee problems can reasonably be
4    expected to result in some functional restrictions.  However, the evidence fails to
     substantiate that the claimant is disabled from all exertional limitations.
5

6    AR 16-17.  The ALJ gave a germane reason to reject Plaintiff's wife statements: her statements

7    were not supported by the objective medical evidence.  Inconsistency with medical evidence is a

8    valid reason for rejecting a lay witness's testimony.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218

9    (9th Cir. 2005).  Therefore, Plaintiff's assertion lacks merit.  The ALJ did not err.

10        ***The Findings at Step Five***

11        Next, Plaintiff argues that the ALJ failed to meet her burden at step five because her RFC

12   "did not reflect all of Plaintiff's functional limitations, including a limitation to less than a full

13   range of sedentary work."  (Doc. 16 at 21-22.)

14        At step five of the sequential analysis, the RFC is an assessment of an individual's ability

15   to do sustained work-related physical and mental activities in a work setting on a regular and

16   continuing basis of eight hours a day, for five days a week, or equivalent work schedule.  SSR

17   96-8p.  The RFC assessment considers only functional limitations and restrictions which result

18   from an individual's medically determinable impairment or combination of impairments.  SSR

19   96-8p.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the

20   record including, inter alia, medical records, lay evidence, and 'the effects of symptoms,

21   including pain, that are reasonably attributed to a medically determinable impairment.'"  *Robbins*

22   *v. Social Security Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

23        In this matter, the ALJ performed her duty properly by considering all relevant evidence.

24   *See* AR 18-19.  That Plaintiff takes issue with the fact the ALJ did not incorporate every

25   limitation Plaintiff desires does not amount to error.

26        ***Evidence Submitted to the Appeals Council***

27        Finally, Plaintiff contends the reports and notes of Drs. Roche and Schaffert, as well as a

28   June 30, 2009, report prepared by Dr. Ramos - all of which diagnose fibromyalgia - require a

1  finding of disability.  (Doc. 16 at 16-17.)  The Commissioner argues that this additional evidence

2  does not "alter the soundness of the ALJ's RFC finding," and that Plaintiff is free to file a new

3  application for disability insurance benefits.  (Doc. 21 at 14-15.)

4       A court's review of the administrative record explicitly includes review of additional

5  evidence accepted into the record by the Appeals Council.  *Ramirez v. Shalala*, 8 F.3d 1449,

6  1452 (9th Cir. 1993).  Therefore, this Court will consider evidence submitted to the Appeals

7  Council in its review of the ALJ's decision.

8       The evidence submitted to the Appeals Council following ALJ Rogers' findings can be

9  found at pages 234 through 244 of the administrative record.  Following said review, this Court

10  must agree with the Commissioner that this additional evidence does not negate the ALJ's

11  findings.

12       The June 30, 2009, treatment note prepared by Dr. Ramos does include a diagnosis of

13  fibromyalgia,[4] but little more than that.  AR 235-236.  Dr. Alan G. Schaffert's May 7, 2009,

14  report also includes an impression of "*probable* fibromyalgia."  AR 239, emphasis added.

15  Lastly, Dr. Niall E. Roche diagnosed fibromyalgia after two office visits.  AR 240-243.

16       After due consideration of the evidence presented to the Appeals Council, this Court finds

17  the ALJ's findings and the Appeals Council's denial of Plaintiff's request for review are

18  supported by substantial evidence and are free of legal error.

19                              **RECOMMENDATION**

20       Based on the foregoing, the Court finds that the ALJ's decision is supported by

21  substantial evidence in the record as a whole and is based on proper legal standards.

22  Accordingly, the Court RECOMMENDS that Plaintiff's appeal from the administrative decision

23  of the Commissioner of Social Security be DENIED and that JUDGMENT be entered for

24  Defendant Michael J. Astrue and against Plaintiff Patrick Walsh.

25       These findings and recommendations will be submitted to the Honorable Lawrence J.

26  O'Neill pursuant to the provisions of Title 28 of the United States Code section 636(b)(l).

27  _____

28       [4]Notably, it also includes a clinical impression that states Plaintiff's "alcohol intake might contribute" to the diagnosis, a reference to the "up to 8 drinks" Plaintiff consumes every night.  *See* AR 235-236.

1    Within fifteen (15) days after being served with these findings and recommendations, the parties

2    may file written objections with the Court.  The document should be captioned "Objections to

3    Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file

4    objections within the specified time may waive the right to appeal the District Court's order.

5    *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

6         IT IS SO ORDERED.

7    **Dated:**   **August 15, 2011**                    _____**/s/ Gary S. Austin**_____
                                          UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28